IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>Highland Capital Management, L.P.[1]<br><br>*Debtor*. | Chapter 11<br><br>Case No. 19-34054 (SGJ) |
| Charitable DAF Fund, L.P.,<br><br>*Plaintiff*,<br><br>v.<br><br>Alvarez & Marsal CRF Management, LLC<br><br>*Defendant*. | Adversary No. 24-03073-sgj |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF STANDING AND JUDGMENT ON THE PLEADINGS**

**PRELIMINARY STATEMENT**

DAF's opposition is a disingenuous attempt to confuse what is at issue on this motion and what is not at issue.[2] On this motion, A&M challenges DAF's standing and the adequacy of its pleading *only* with respect to DAF's claim for breach of fiduciary duty "relating to A&M's handling of bankruptcy claims on behalf of the 'Crusader Funds' against Debtor Highland

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Second Amended Petition (Dkt. 9, Ex. 3 pp. 27–44), A&M's Brief in Support of its Motion to Dismiss ("A&M Br.," Dkt. 9), or DAF's Response to Motion to Dismiss ("DAF Resp.," Dkt. 39), as applicable.

1

Capital Management, L.P." A&M Br. at 1. These were allegations added in DAF's Second Amended Petition, and they constitute prototypical derivative claims—alleging, as they do, that A&M "breached its fiduciary duties to the investors of Crusader Fund II," including "to ensure that the sale of the Claims was in the best interests of all investors." Ex. 3 p. 37, Second Am. Pet. ¶ 31; *see also id.* p. 35, ¶ 24 (alleging that "the Crusader Funds' investors would have received an additional $30 million" but for A&M's conduct with respect to the bankruptcy claims). Because the duties and the damages alleged ran to the Crusader Funds as a whole, and not specifically to DAF, these claims are plainly derivative claims, and DAF has not even attempted to satisfy the derivative standing requirements of Bermuda law and Bankruptcy Rule 7023.1.

Rather than grappling with the arguments made in the motion or DAF's own allegations added in the Second Amended Petition, DAF's Response simply ignores them. DAF barely mentions its allegations that A&M settled and sold the Crusader Funds' bankruptcy claims against Highland for too little. Instead, DAF contends that DAF's *original* claims—relating to the cancellation of DAF's interest in Crusader Fund II and the temporary withholding of distributions from the Crusader Funds to DAF—are direct claims belonging to DAF, and not derivative claims on behalf of Crusader Fund II. DAF Resp. at 5. But A&M's motion does not contend otherwise, and those claims are not the subject of this motion. To be sure, the claims relating to cancellation and withholding of DAF's distributions are completely without merit, as A&M will demonstrate at the appropriate time. For now, however, the only issues are whether DAF's claims *relating to A&M's handling of the bankruptcy claims* are derivative and whether DAF has adequately pled a right to bring those claims on behalf of Crusader Fund II. Because

DAF does not address the relevant claims and allegations, and does not even contend that it has standing to bring such derivative claims, A&M's motion should be granted.

## ARGUMENT

I. **DAF's Allegations Relating to the Handling of the Crusader Funds' Bankruptcy Claims are Derivative, Not Direct**

As noted in A&M's opening brief, DAF's original claims in this action, set forth in both its Original Petition (Ex. 1) and its First Amended Petition (Ex. 2), alleged that A&M, as investment manager of the Crusader Funds, had improperly "refused to make distributions to DAF and treated DAF's Direct Interest as having been extinguished." Ex. 2 p. 17, First Am. Pet. ¶ 11.  On August 28, 2024, however, DAF filed its now operative pleading, the Second Amended Petition. Ex. 3 p. 28, Second Am. Pet.

Helpfully, in the Second Amended Petition, DAF broke up its factual allegations into two subsections. First, in a section headed "Withheld Distributions," DAF repeated, almost verbatim, the allegations of its prior pleadings regarding A&M's allegedly wrongful refusal to make distributions to DAF from the Crusader Funds. *See* Ex. 3 pp. 31–32, Second Am. Pet. ¶¶ 11–16. Second, DAF added a series of new allegations, under the heading "Sale of Claims." *Id.* p. 33–36, ¶¶ 17–26. It is the allegations in that subsection that are the subject of this motion.

In those paragraphs, DAF alleged:

- that A&M "violated[] separate and independent fiduciary duties which should have ensured, but did not, that *all Crusader Fund investors were treated fairly*," *id.* p. 33, ¶ 17 (emphasis added);

- that A&M entered into a settlement with Highland Capital that reduced the allowed amounts of the Crusader Funds' bankruptcy claims from $214 million to just $137 million and, in the process, "allowed the Redeemer Committee to

3

control negotiations concerning funds to which the Crusader Funds asserted entitlement," *id.* pp. 33–34, ¶¶ 20–21;

- that A&M "abdicated … its duties to manage Crusader Fund II's assets, thereby failing to ensure fair treatment of *all interest holders and maximization of recovery*," *id.* p. 34, ¶ 22 (emphasis added);

- that A&M then sold the Crusader Funds' bankruptcy claims "for approximately 50% of the allowed amount of the Redeemer Committee's claim alone, or approximately one third of the Crusader Funds' total original claim," *id.* p. 35, ¶ 23; and

- that, had A&M simply held on to the bankruptcy claims, "the Crusader Funds' investors would have received an additional $30 million over what was paid for the Claims," *id.* p. 35, ¶ 24.

Based on these allegations, DAF added a new paragraph in its first cause of action for breach of fiduciary duties, alleging that "A&M further breached its fiduciary duties to the investors of Crusader Fund II," including the duty "to ensure that the sale of the Claims was in the best interests of all investors." *Id.* p. 37, ¶ 31.

As A&M demonstrated in its motion, Bermuda law applies to DAF's claims based on the handling of the Crusader Funds' bankruptcy claims because Crusader Fund II is a a Bermuda entity. *See Cruz v. Reid-Anderson*, 711 F. Supp. 3d 642, 645 (N.D. Tex. 2024); Ex. 6 p. 73, Luthi Decl. ¶ 8; A&M Br. at 5–6. Under Bermuda's proper plaintiff rule, only the company may seek redress for a loss incurred by the company. Ex. 6 pp. 79–80, Luthi Decl. ¶¶ 27–30. Under any reasonable construction of the allegations summarized above, DAF's claim based on the

"Sale of Claims" is a derivative claim that belongs to Crusader Fund II, not to DAF or any other investors individually.

DAF insists that its claim is a direct claim, but its argument on this point almost entirely ignores the allegations added in the Second Amended Petition. DAF's Response discusses, at length, its claim based on "A&M's retroactive cancellation of DAF's Direct Interest" and the "deprivation by A&M of timely and maximized distributions to which DAF was entitled." DAF Resp. at 5. DAF claims that A&M "assumed *independent* fiduciary duties to DAF" by "holding on to DAF's funds separate and apart from the remainder of the Crusader Fund." *Id.* at 8 (emphasis in original). DAF argues that "[n]o other shareholder had its interest wrongfully cancelled" *id.* at 9, and that it seeks to "impose liability based on independent duties owed as a result of A&M's cancellation and segregation of DAF's Direct Interest from the remainder of the Crusader Funds," *id.* at 10.[3]

The obvious problem with DAF's argument is that it discusses the wrong claim—A&M's motion is directed only at the "Sale of Claims" allegations, not the "Withheld Distributions" allegations. DAF's claims based on the withholding of distributions and the cancellation of DAF's interest in Crusader Fund II may well be direct claims, but they are not the claims that A&M seeks to dismiss on this motion.[4]

---

[3] Although it is not directly relevant to the issues on this motion, it should be noted that the Second Amended Petition nowhere alleges that A&M held DAF's funds "separate and apart from the remainder of the Crusader Fund," DAF Resp. at 8, or that it "segregat[ed]" DAF's monies from the remainder of the Crusader Funds, *id.* at 10, despite DAF's assertions in its Response. Rather, the entire theory of DAF's claims is that A&M failed to distribute money from the Crusader Funds to DAF when distributions were made to other investors; thus, if anything, A&M left DAF's monies *as part of* the Crusader Funds' accounts, at least until it later made those distributions to DAF.

[4] Because DAF's withholding and cancellation claim is not being challenged on this motion, DAF's discussion of the alleged adequacy of its pleading of that claim under Texas law is beside the point. *See* DAF Resp. at 7–9. But for the sake of completeness, DAF alleges no facts from which a sufficient "informal fiduciary duty" could be said to exist between A&M and DAF. *See Armstrong v. Armstrong*, 570 S.W.3d 783, 789 (Tex. App. 2018) (citing *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App. 2011)) (informal fiduciary duties do not exist without a "a long association in a business relationship *as well as personal friendship*") (emphasis added); *Mary E. Bivins Found. v. Highland Cap. Mgmt. L.P.*, 451 S.W.3d 104, 113 (Tex. App. 2014) (finding no "Texas authority recogniz[es] a

As to the claims relating to the settlement and subsequent sale of the Crusader Funds' claims, DAF says almost nothing. It ignores its own allegations about A&M's breaches of duties to all Crusader Funds investors; it ignores its own allegations about A&M settling and selling the Crusader Funds' bankruptcy claims for too little; and it ignores its own allegations about $30 million in losses to the Crusader Funds.

The only place where DAF even tries to tie its "Sale of Claims" allegations to any direct injury to DAF is the assertion that A&M timed its cancellation of DAF's interest to coincide with distribution by the Crusader Funds of monies received from the sale of their bankruptcy claims. *See* DAF Resp. at 8 (citing Ex. 2 p. 35, Second Am. Pet. ¶ 25). But the logic of this argument is inscrutable: If A&M planned to cancel DAF's interest and withhold any distributions to DAF, why did A&M (allegedly) abdicate its responsibilities to manage the Crusader Funds' bankruptcy claims and agree to settle and sell those claims for millions of dollars less than they were worth? In all events, DAF's harm (if any) is from the cancellation and withholding of distributions—which is not being challenged at this time—and not from A&M's handling of the bankruptcy claims. Any claim relating to the latter belongs exclusively to the Crusader Funds, not to DAF or any other investor in the Funds. *See Erie Cnty. Emps. Ret. Sys. v. Isenberg*, No. H–11–4052, 2021 WL 3100463, at *3 (S.D. Tex. 2012) (citing *Clark v. Energia Glob. lnt'l, Ltd.*, [2001] S.C. 173 at 10 (Berm. Sup. Ct.)); *City of Harper Woods Emps.' Ret. Sys. v. Olver*, 589 F.3d 1292, 1294–95 (D.C. Cir. 2009) ("[T]he company, not a shareholder, is the proper plaintiff in a suit seeking redress for wrongs allegedly committed against the company.").

---

fiduciary relationship between an investor in a[n investment] fund" and the "fund's investment manager"); *Lindley*, 349 S.W.3d at 124 (Texas courts are reluctant to find an informal fiduciary duty).

## II. DAF Fails to Plead Derivative Standing

Because DAF's claim related to the Crusader Funds' bankruptcy claims is derivative, DAF would need to satisfy the heightened pleading standards under Federal Rule of Bankruptcy Procedure 7023.1 and Bermuda law in order to pursue that claim. *See* FED. R. BANKR. P. 7023.1; Ex. 6 p. 87, Luthi Decl. ¶ 45. DAF does not even purport to do so, instead putting all of its eggs in its "direct claim" argument. Accordingly, DAF has conceded that its claim must be dismissed if the Court concludes, as it should, that the claim is derivative. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (issues that are inadequately briefed are considered to be waived); *Howley v. Bankers Standard Ins.*, No. 3:19-CV-2477-L, 2021 WL 913290 at *7 (N.D. Tex Mar. 10, 2021) (granting motion to dismiss without leave to amend where party "waived…the issue[]" by failing to address it); *Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citation omitted).

## III. Leave to Replead Should Be Denied

DAF's request for leave to replead should be denied because amendment is futile. In the Fifth Circuit, "bare bones" requests to amend pleadings are futile if the plaintiff "fail[s] to apprise the district court of the facts that [the plaintiff] would plead in an amended complaint." *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491 (5th Cir. 2024) (citation and internal quotations omitted).

Here, DAF does not provide any new facts it plans to include in a *third* amended petition. According to DAF, its only reason to replead is "to clarify that DAF alleges a direct claim with direct damages experienced only by DAF" because "only DAF's interest was cancelled." DAF Resp. at 12. As noted above, A&M does not presently seek dismissal of DAF's claims relating

7

to the cancellation of its interest. Accordingly, DAF's proposed amendment would not cure the insufficiency of the claims that are being challenged by A&M, relating to the handling of the Crusader Funds' bankruptcy claims. Accordingly, DAF's request for leave to replead should be denied.

## CONCLUSION

For the foregoing reasons, this court should dismiss DAF's claim for breach of fiduciary duty relating to A&M's handling of the Crusader Funds' bankruptcy claims under Federal Rules of Bankruptcy Procedure 7023.1 and 7012, and deny DAF's request for leave to amend.

Dated: February 21, 2025

Respectfully submitted,

By: */s/ John T. Cox III*
John T. Cox III
Texas Bar No. 24003722
Andrea Calhoun
Texas Bar No. 24116697
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Ste. 2100
Dallas, Texas 75201-2923
Telephone: (214) 698-3256
Facsimile: (214) 571-2923
TCox@gibsondunn.com
acalhoun@gibsondunn.com


Marshall King (*Pro Hac*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-3905
Facsimile: (212) 351-5243
mking@gibsondunn.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of February 2025, the foregoing document was filed using the Court's CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

                                      */s/ John T. Cox III*
                                      John T. Cox III