

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 18, 2025**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.** | § | **Bankr. Case No. 19-34054-SGJ-11** |
| | § | **(CHAPTER 11)** |
| *Reorganized Debtor.* | § | |
| _____ | § | |
| **CHARITABLE DAF FUND, L.P.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Adv. Pro. No. 24-03073-sgj** |
| | § | |
| **ALVAREZ & MARSAL CRF** | § | |
| **MANAGEMENT, LLC,** | § | |
| | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS *PORTION*\* OF PLAINTIFF'S COUNT ONE BREACH OF FIDUCIARY DUTY CLAIM

### *(\*AS ARGUED, THE PORTION ASSERTING BREACH OF FIDUCIARY DUTY DUE TO DEFENDANT'S ALLEGED MISMANAGEMENT OF BANKRUPTCY CLAIMS)*

## I.  INTRODUCTION

Before the bankruptcy court is *Defendant's Motion to Dismiss for Lack of Standing and Judgment on the Pleadings Under Rule 7012 for Failure to State a Claim & Incorporated Brief in Support* ("Motion to Dismiss")[1] filed in the above-referenced adversary proceeding ("Action"). The Defendant is Alvarez & Marsal CRF Management, LLC ("Defendant" or "Alvarez & Marsal"). The Plaintiff is Charitable DAF Fund, L.P. ("Plaintiff" or "DAF"). The Action was originally brought by Plaintiff in state court[2] but was removed to this bankruptcy court by Alvarez & Marsal, based on an argument that the Action implicates orders entered in (and is, thus, "related to") the bankruptcy case of Highland Capital Management, L.P. ("Highland" or "Debtor" or sometimes "Reorganized Debtor").[3]

The Action is essentially *a breach of fiduciary duty lawsuit* (Count One), although it also includes causes of action for conversion (Count Two) and tortious interference (Count Three). The facts are that Plaintiff DAF acquired a shareholder interest in a certain fund known as "Crusader Fund II"—later defined—which was a Bermuda exempted mutual fund. Defendant Alvarez & Marsal was the investment manager of the Crusader Fund II, pursuant to a contract between

---

[1] Dkt. Nos. 8 & 9 in this Action. When referring to an item on the docket of the main bankruptcy case of Highland, the court will use the designation "Bankr. Dkt. No. _____".

[2] Cause No. DC-22-10107, filed in the 116th Judicial District Court of Dallas County, Texas ("State Court").

[3] The Plaintiff, DAF, filed a motion to remand to the State Court on October 14, 2024, arguing that the bankruptcy court must remand because Alvarez & Marsal's removal was untimely, the bankruptcy court does not have "related to" bankruptcy jurisdiction over the Action, and the principles of abstention under §§ 1334 and 1452 apply. The bankruptcy court denied the motion to remand on January 13, 2025 ("Order Denying Remand"). *See* Dkt. No. 22, entered on January 14, 2025. DAF filed a motion for leave to file an interlocutory appeal of the Order Denying Remand on January 28, 2025. Dkt. No. 29. DAF filed on that same day a motion to stay pending appeal ("Motion to Stay Pending Appeal"), seeking a stay of this entire Action, including an abatement of all deadlines for briefing and the hearing date on Defendant's Motion to Dismiss. Dkt. No. 30. Following a hearing held on February 10, 2025, the bankruptcy court denied the Motion to Stay Pending Appeal, and DAF filed a response brief ("Response") to the Motion to Dismiss on February 11, 2025. *See* Dkt. No. 39. DAF subsequently filed a motion for a stay pending interlocutory appeal in the District Court on February 27, 2025 (fifteen minutes before oral argument was scheduled in the bankruptcy court on the Motion to Dismiss). The bankruptcy court went forward with oral argument on the Motion to Dismiss, in light of having heard nothing from the District Court regarding DAF's newest motion for stay.

Alvarez & Marsal and multiple Crusader Funds,[4] including Crusader Fund II.  Notably, DAF is

related to Highland, in that DAF (a Cayman Island entity, said to be dedicated to charitable causes)

was at least seeded with Highland money and was advised by Highland's founder, Mr. James

Dondero ("Dondero").  Interestingly, DAF acquired its interest in Crusader Fund II in year 2016,

around the very same time that Highland was removed as the investment manager of Crusader

Fund II (it was by a controlling committee of interest holders in the fund) and replaced by Alvarez

& Marsal as the new investment manager.  DAF represents that it paid over $1 million for its

interest in Crusader Fund II to the previous holder of the interest. In any event, Plaintiff argues in

its live complaint in this Action (the "Second Amended Petition") that Alvarez & Marsal breached

a ***common law fiduciary duty owed directly to DAF, as an investor in Crusader Fund II,*** in two

broad respects:

> (a) first, by withholding distributions to DAF—based on Alvarez & Marsal's stated belief that DAF's interest in Crusader Fund II had been cancelled pursuant to a prior arbitration order—a position that Alvarez & Marsal later abandoned, apparently to avoid protracted litigation with DAF (the "Withheld Distributions Theory" or sometimes "Breach of Fiduciary Duty Theory A"[5]); and

> (b) second, by virtue of Alvarez & Marsal's role in connection with ***a Bankruptcy Rule 9019 settlement of proofs of claim of the Crusader Funds*** during the Highland bankruptcy case and a later ***sale of those same settled claims***—the theory being that Alvarez & Marsal "abdicated its responsibilities" in connection with these events (the "Mismanagement of Bankruptcy Claims Theory" or "Breach of Fiduciary Duty Theory B").

The pending Motion to Dismiss deals ***only*** with the ***Mismanagement of Bankruptcy***

***Claims Theory—i.e., Breach of Fiduciary Duty Theory B***.  In other words, it deals only with a

portion ***DAF's Breach of Fiduciary Duty Claim***.  Alvarez & Marsal argues that this portion of

---

[4] As will later be further defined, there were multiple "Crusader Fund" entities that were organized for the purposes of investing all of their assets into a "Master Fund," which was also a Bermuda exempted limited partnership. Sometimes this Opinion will generically refer to these entities collectively as the "Crusader Funds," as do the parties herein at times.

[5] This is the court's nomenclature, not the parties'.

the breach of fiduciary duty claim should be dismissed due to lack of standing on DAF's part to bring what would essentially be a derivative claim of *Crusader Fund II* against Alvarez & Marsal and also for failure to state a claim upon which relief can be granted. Specifically, the argument is that only Crusader Fund II could bring this Breach of Fiduciary Duty Theory B, not an individual investor in the fund, as any harm would be to *Crusader Fund II itself* and only derivatively to the investors therein. Alvarez & Marsal adds that DAF has not satisfied the requirements that would permit DAF to maintain a derivative claim under Federal Rule of Bankruptcy Procedure 7023.1 or Bermuda law.

DAF fervently disagrees. It argues that it, as an investor (*i.e.,* holder of an equity interest) in Crusader Fund II, has *direct* claims for breach of fiduciary duty against Alvarez & Marsal as investment manager (both as to Breach of Fiduciary Duty Theory A and Theory B). DAF argues, without analysis, that Texas common law applies. It is not entirely clear why Texas law would apply here, since Crusader Fund II is a *Bermuda* entity; the investment management agreement, between the Crusader Funds and Alvarez & Marsal, is governed by *New York law*; DAF is a *Cayman Islands entity*; and Alvarez & Marsal is a *Delaware entity*.[6] However, applying either

---

[6] Note that a federal court sitting in diversity does not apply federal choice of law rules but instead applies the choice of law rules of the state in which it sits. *Carson v. USAA Cas. Ins. Co.*, 110 F.4th 791, 793 n.4 (5th Cir. 2024) (citations omitted). However, this court is sitting in federal bankruptcy jurisdiction. The Fifth Circuit has recently noted that that the Bankruptcy Code itself does not supply choice of law rules and that, when it comes to courts sitting in bankruptcy jurisdiction, it has not decided which choice of law rules should apply. *Deutsche Bank Tr. Co. Ams. v. U.S. Energy Dev. Corp. (In re First River Energy, L.L.C.)*, 986 F.3d 914, 924 (5th Cir. 2021) ("The Bankruptcy Code . . . provides no method for resolving conflicts of law, and '[t]his circuit has not determined whether the [federal] independent judgment test or the forum state's choice-of-law rules should be applied in bankruptcy.'") (quoting *MC Asset Recovery, LLC v. Commerzbank A.G, et al. (In re Mirant Corp)*., 675 F.3d 530, 536 (5th Cir. 2012) (citing *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981))). The court in *First River Energy* found it unnecessary to decide whether federal choice of law rules or Texas choice of law rules applied, however, because application of both bodies of law would yield the same result. *Id.* ("Texas courts, as it happens, apply the Restatement (Second) of Conflicts of Law (1972). The federal independent judgment test . . . also uses the Restatement (Second) of Conflicts of Law.") (citations omitted). In fact, the Fifth Circuit has stated that, where the cause of action is a tort (as it is here), the application of federal choice of law rules and Texas choice of law rules would result in essentially the same outcome, and, therefore, the court applied the more simple-to-apply Texas choice of law rules. *In re Mirant Corp.*, 675 F.3d at 536 ("In tort cases, Texas courts apply the most significant relationship test. The [federal] independent judgment test is essentially synonymous with the most significant

Texas law (as presented by DAF) or Bermuda law (as presented by Alvarez & Marsal), and accepting the allegations of the Second Amended Petition as true, this court does not believe DAF states a plausible claim for breach of a fiduciary duty owed ***directly*** to it by Alvarez & Marsal, based on the Mismanagement of Bankruptcy Claims Theory, and it also does not have standing to pursue such a claim derivatively. For the reasons stated below, this court grants the Motion to Dismiss—determining that this portion of the Count One Breach of Fiduciary Duty Claim (i.e., the Mismanagement of Bankruptcy Claims Theory or Breach of Fiduciary Duty Theory B) must be dismissed with prejudice.

## II.    THE PARTIES, BACKGROUND, AND PROCEDURAL HISTORY

### A.    *The Parties.*

<u>Plaintiff.</u>  The Plaintiff in this Action, DAF, is an organization founded by, advised by, and believed to be controlled by Dondero—the founder and former Chief Executive Officer ("CEO") of Highland.  DAF is not a section 501(c)(3) non-profit entity but, rather, is "an exempted company" incorporated in the Cayman Islands.  DAF holds an interest in Highland Crusader Fund II ("Crusader Fund II"), an offshore investment fund (organized under the laws of Bermuda). Crusader Fund II is one of four investment funds formerly managed by Highland that the court will refer to as the "Crusader Funds."  DAF represents that it purchased its shares/interest in

---

relationship approach. In either case, Sections 6 and 145 [of the Restatement (Second)] provide the appropriate analytical framework."). Because the breach of fiduciary duty cause of action sounds in tort, this court would apply Texas' "most significant relationship" test here for determining which law applies to DAF's breach of fiduciary duty claim, but only if it first determines that the laws of the jurisdictions being considered conflict. *See Jelec USA, Inc. v. Safety Controls, Inc.,* 498 F. Supp. 2d 945, 948 (S.D. Tex. 2007).  Although it appears to the court that the laws of Bermuda and Texas are not the only possible laws applicable here, the parties have only argued application of Bermuda law (Alvarez & Marsal) and Texas law (DAF), so the court need not consider the laws of Delaware, New York, or the Cayman Islands in applying the first step of Texas choice-of-law analysis. *See Harrison Co., L.L.C. v. A-Z Wholesaler, Inc.,* 44 F.4th 342, 346 n.1 (5th Cir. 2022) (citing *Arthur W. Tifford, PA v. Tandem Energy Corp.,* 562 F.3d 699, 705 n.2 ("[B]y failing to brief any other state's law, the parties have forfeited any choice of law argument.").

Crusader Fund II on June 30, 2016, from an entity called Promethee T Fund ("Promethee") for in excess of $1 million.

Defendant.  The Defendant, Alvarez & Marsal, is a financial advisory firm that is wholly unrelated to the Highland complex of companies.[7]  It became entangled with Highland prepetition (in or around August 2016) when Alvarez & Marsal became the successor-investment manager of the Crusader Funds after Highland was ousted from that role subsequent to Bermuda liquidation proceedings being commenced for the Crusader Funds.[8]

The Nature of the Action.  In its original and first amended petition filed in the Action in State Court (in 2022), DAF alleged that it was an investor in Crusader Fund II and that Alvarez & Marsal, in its role as successor-investment manager, wrongly withheld certain distributions to DAF from Crusader Fund II, based on Alvarez & Marsal's wrongful cancellation of DAF's interests in Crusader Fund II in 2021 (i.e., "Breach of Fiduciary Duty Theory A").  With regard to the withheld distributions, Alvarez & Marsal has taken the position that it was simply relying upon a provision in a prepetition arbitration award from May 2019, entered against Highland, that had directed that DAF's investment interest be extinguished as wrongfully acquired (and a settlement approved by the bankruptcy court, in October 2020, that incorporated and approved this very same term of the arbitration award). In any event, on February 17, 2023, Alvarez & Marsal, indicating its desire to avoid "the headache and expense of litigation," caused Crusader Fund II to distribute $951,060.82 to DAF, representing the entirety of distributions that had previously been withheld from DAF, and Alvarez & Marsal also agreed to include DAF in all future distributions to the investors in

---

[7] The court informally uses the term "Highland complex of companies," mimicking a term parties/lawyers have sometimes used throughout the Highland bankruptcy case.  Parties have represented that there are approximately 2,000 or so companies in the Highland complex of companies, although only Highland itself filed Chapter 11.

[8] Alvarez & Marsal stepped in as investment manager to the Crusader Funds after they went into liquidation mode (in Bermuda liquidation proceedings) and the investors in the Crusader Funds became crossways with Highland and terminated Highland as the investment manager of the funds.

Crusader Fund II. Alvarez & Marsal apparently assumed that Plaintiff would declare victory and dismiss the Action as moot at that point, but Plaintiff continued with the Action, by amending its petition to broaden the allegations and continuing to pursue extensive discovery. [9]

It was in its Second Amended Petition (filed on August 28, 2024) that DAF first raised "Breach of Fiduciary Duty Theory B"—based upon allegations that Alvarez & Marsal had "abdicated its responsibilities" as investment manager by:  (i) not opposing a bankruptcy court-approved settlement agreement in October 2020 that set the amount of the Crusader Funds' allowed claim in the Highland bankruptcy case (such settlement was almost entirely consistent with the aforementioned May 2019 prepetition arbitration award against Highland and was widely noticed—including to DAF—and was hotly contested[10] and only approved after extensive evidence); and (ii) permitting or participating in the Crusader Funds' later sale of their allowed unsecured claims against Highland to a third-party claims buyer post-petition (in fact, the sale occurred post-confirmation, in April 2021). It was these added theories and allegations of fact, regarding Alvarez & Marsal's alleged breaches of fiduciary duty, that this court determined were "related to" the Highland bankruptcy case, when denying DAF's motion to remand.

Some Additional Context Regarding the Crusader Funds, Alvarez & Marsal's Role, and Events During the Highland Bankruptcy.  Before further addressing the underlying Motion to Dismiss, some additional context seems appropriate. The thrust of DAF's "Breach of Fiduciary Duty Theory B" is that Alvarez & Marsal "abdicated its responsibilities" as investment manager to the Crusader Funds, by not opposing a bankruptcy court-approved settlement agreement in October 2020 that set the amount of the Crusader Funds' allowed claims in the Highland

---

[9] *See* Ex. 3, Notice of Removal, Dkt. No. 1-3, at 79.

[10] The largest creditor in the Highland case, UBS Securities LLC together with UBS AG, London Branch ("UBS"), contested the settlement and later appealed the bankruptcy court's approval of the settlement. UBS dismissed its appeal with prejudice on June 14, 2021.

bankruptcy case.  What does this exactly mean?  The answer can be gleaned from the record of the Highland bankruptcy case, of which this court takes judicial notice.

As alluded to previously, Highland was—prior to Alvarez & Marsal—the investment manager of the "Crusader Funds."  The Crusader Funds were formed between 2000 and 2002 and included the following entities:

> Highland Crusader Offshore Partners, L.P. (the "Master Fund");
> Highland Crusader Fund, L.P., a Delaware "onshore" fund ("Onshore Fund");
> Highland Crusader Fund, Ltd., a Bermuda offshore fund ("Crusader Fund I"); and
> Highland Crusader Fund II, Ltd., also a Bermuda offshore fund ("Crusader Fund II").

In October 2008, there was a worldwide financial crisis ongoing, and Highland had been overwhelmed with redemption requests from numerous investors in the Crusader Funds. In response, Highland placed the Crusader Funds in wind-down and sought to liquidate the assets of, and make distributions to the investors in, the Crusader Funds.  However, disputes arose over these distributions, and an investor accused Highland of misconduct.  Investors in the Crusader Funds subsequently commenced litigation, alleging breach of fiduciary duty claims against Highland based on allegations that Dondero had refused to make mandated distributions and honor redemption requests and traded the funds' positions in a manner designed to render them illiquid in order to deter future redemptions, which led to multiple disputes among redeeming investors. This was all resolved in July 2011, with the adoption of a *Joint Plan of Distribution of the Crusader Funds* (the "Crusader Plan") and a *Scheme of Arrangement Between the Crusader Funds and Their Scheme Creditors* (the "Crusader Scheme," and, together with the Crusader Plan, the "Crusader Plan and Scheme").

At this point, the "Redeemer Committee" entered the picture.  As part of the Crusader Plan and Scheme, a committee referred to as the "Redeemer Committee" was elected from the Crusader Funds' investors to oversee the wind-down and management of the Crusader Funds (which were

still being managed by Highland) and to resolve certain disputes arising in connection with the Crusader Funds' wind-down proceedings.  The Redeemer Committee's members consisted of some, but not all, of the investors in the Crusader Funds.  For example, DAF did not become an investor in Crusader Fund II until much later (in 2016), so it was not a member of the Redeemer Committee. Ultimately, disputes evolved between the Redeemer Committee and Highland, and this led to the Redeemer Committee's termination of Highland as the investment manager of the Crusader Funds (as of August 4, 2016, pursuant to a notice dated July 5, 2016).  Disputes thereafter led to multi-theater litigation (including in Delaware, Bermuda, and the Cayman Islands)—the most significant of which was an arbitration action commenced on July 5, 2016, by the filing of a Notice of Claim with the American Arbitration Association (the "AAA") (the "Arbitration"),[11] in which the Redeemer Committee asserted various claims against Highland arising from Highland's service as the investment manager for the Crusader Funds.  It was at this point that Alvarez & Marsal took over as investment manager, in place of Highland, for the Crusader Funds.  An arbitration panel (convened by the International Centre for Dispute Resolution, International Arbitration Tribunal)[12] held a nine-day evidentiary hearing in September 2018, that included testimony from eleven fact witnesses and four expert witnesses and ultimately awarded the Redeemer Committee damages against Highland in the aggregate amount of **$190,824,557**,

---

[11] The Redeemer Committee and Highland subsequently became engaged in additional lawsuits and actions including: (a) Redeemer Committee of the Highland Crusader Fund v. Highland Capital Management, L.P., Chancery Court, Delaware, C.A. No. 12533-VCG (the "Delaware Action"); (b) Redeemer Committee of the Highland Crusader Fund and Highland Capital Management, L.P., Supreme Court of Bermuda, Civil Jurisdiction, Case No. 01-16-0002-6927 ("Bermuda Action No. 1"); (c) Highland Capital Management, L.P. and Redeemer Committee of the Highland Crusader Fund, Supreme Court of Bermuda, Civil Jurisdiction (Commercial Court), 2017: No. 308 ("Bermuda Action No. 2"); and (d) Redeemer Committee of the Highland Crusader Fund and Highland Capital Management, L.P., Grand Court of Cayman Islands, Financial Services Division, Cause No. 153 of 2019 (CRJ) (the "Grand Cayman Action").

[12] The Panel was comprised of three highly regarded attorneys:  John S. Martin, Jr., a former United States Attorney for the Southern District of New York and a former United States District Court Judge for the Southern District of New York; David Brodsky, a former federal prosecutor and partner at Latham & Watkins and Schulte Roth & Zabel and a Fellow of the American College of Trial Lawyers; and Michael D. Young, one of the most highly-regarded arbitrators in the country who has been a full-time neutral for more than thirty years and who has presided over more than 300 arbitrations, appraisals, or other binding dispute resolution proceedings.

including the accrual of pre-judgment interest, but before applying any offsets, pursuant to: (a) a Partial Final Award, dated March 6, 2019 (the "March Award"), (b) a Disposition of Application for Modification of Award, dated March 14, 2019 (the "Modification Award"); and (c) a Final Award, dated May 9, 2019 (the "Final Award," and together with the March Award and the Modification Award, the "Arbitration Award").   In addition to awarding monetary damages, the Arbitration Award also provided for, among other things, (i) the cancellation of all limited partnership interests or shares in the Crusader Funds that were held by Highland, as well as of an entity called Eames (controlled by Highland), and of DAF.  The Arbitration Award is subject to the Federal Arbitration Act and The Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

The Redeemer Committee soon moved in the Delaware Chancery Court for it to confirm the Arbitration Award.  Highland moved for the Delaware Chancery Court to vacate parts of the Arbitration Award, arguing that some aspects of it were procedurally improper, but notably not challenging any of the factual findings, credibility assessments, or substantive legal conclusions contained therein.  On the day that the Redeemer Committee's motion to confirm and Highland's motion to vacate were scheduled for hearing in the Delaware Chancery Court, Highland filed for bankruptcy (October 16, 2019).

Soon after the Highland bankruptcy case was filed, an official committee of unsecured creditors (the "UCC") was appointed in the case by the United States Trustee.   Not surprisingly, the Redeemer Committee was appointed as a member of the UCC (not surprisingly, since it was the holder of an approximately $190 million Arbitration Award).

The Redeemer Committee and the Crusader Funds separately filed proofs of claim in the Highland case.  Specifically, on April 3, 2020, the Redeemer Committee filed a general unsecured

claim, which was assigned Claim No. 72 in the Claims Register, in the amount of $190,824,557.00 (as of the Petition Date)—representing the Redeemer Committee's damage claim under the Arbitration Award. The Redeemer Committee also alleged entitlement to post-petition interest, attorneys' fees, costs and other expenses that allegedly continued to accrue. The Redeemer Committee additionally asserted an unliquidated claim amount that related to its rights arising under the Arbitration Award to cancel the "limited partnership interests in the Crusader Fund that are (i) held by [Highland] and [DAF] . . ., and (ii) held by Eames, Ltd."[13] The proof of claim identified "Redeemer Committee Highland Crusader Fund" as the creditor filing the claim and was signed by its counsel.

On April 6, 2020, the Crusader Funds filed a separate, general unsecured proof of claim in the amount of $23,483,446.00, consisting of approximately $8.2 million in management fees and $15.3 million in distribution fees, which was assigned in the claims register as Claim No. 81. The rider to Claim No. 81 indicates that it was filed by the Crusader Funds "by and through their authorized investment manager, [Alvarez & Marsal]," and the proof of claim itself states that "payments to the creditor" should be sent to Alvarez & Marsal and was signed by "[c]ounsel to [Alvarez & Marsal], as Investment Manager."[14]

These two proofs of claims—one by the Redeemer Committee and the other by the Crusader Funds—were the subject of a settlement agreement ("Redeemer/Crusader Rule 9019 Settlement") reached during the Highland bankruptcy case—specifically, as set forth in a pleading

---

[13] Rider to Proof of Claim No. 72, at 2. Note that the Final Award provided, in relevant part, for the cancellation of the limited partnership interests in the Crusader Funds that are (i) held by Highland and DAF that are identified in RC411, and (ii) held by Eames, Ltd. (Final Award ¶¶ F.a.v and F.a.x). The Final Award provided for Highland to transfer or take all necessary steps to cause the transfer of such interests to the Redeemer Committee for the benefit of the Crusader Funds. The Final Award also provided that the Redeemer Committee had the independent right to cause the Crusader Funds to cancel such limited partnership interests.

[14] The Crusader Funds also asserted a right to recover the damages granted under the Arbitration Award but expressly acknowledged that they would "withdraw this portion of their claim if and to the extent that the Redeemer Committee's claim is allowed."

entitled *Debtor's Motion for Entry of an Order Approving Settlements with (A) the Redeemer Committee of the Highland Crusader Fund (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81), and Authorizing Actions Consistent Therewith* (the "Redeemer/Crusader Rule 9019 Motion") that was filed on September 23, 2020,[15] prior to confirmation of Highland's Chapter 11 Plan (which confirmation occurred in February 2021). Highland summarized some of the material terms of the Redeemer/Crusader Rule 9019 Settlement as follows:[16]

- The Redeemer Committee's claim (Claim No. 72) shall be allowed in the amount of $136,696,610.00 as a general unsecured claim;
- The Crusader Funds' claim (Claim No. 81) shall be allowed in the amount of $50,000.00 as a general unsecured claim;
- The Debtor and Eames [Eames, Ltd. was an indirect, wholly owned subsidiary of Highland that had received an interest in the Crusader Funds under circumstances that the Arbitration Panel had found improper] will each (a) consent to the cancellation of certain interests in the Crusader Funds held by them that the [Arbitration] Panel found were wrongfully acquired, and (b) agree that they will not object to the cancellation of certain interests in the Crusader Funds held by the Charitable DAF that the [Arbitration] Panel also found were wrongfully acquired;
- The Debtor and Eames will each acknowledge that they will not receive any portion of the Reserved Distributions, and the Debtor will further acknowledge that, beginning as of the Stipulation Effective Date, it will not receive any payments from the Crusader Funds in respect of any Deferred Fees, Distribution Fees, or Management Fees.

The bankruptcy court held a hearing ("Hearing") on the Redeemer/Crusader Rule 9019 Motion on October 20, 2020. Numerous parties (including Dondero) had objected to a totally unrelated settlement motion that was set for a hearing at that same time (i.e., a settlement involving Acis Capital Management L.P.), but there was only one objection to the Redeemer/Crusader Rule 9019 Settlement, and that objection was filed and prosecuted by an unrelated creditor called UBS.[17] UBS was a member of the UCC in the Highland case and it had filed a proof of claim

---

[15] *See* Bankr. Dkt. No. 1089.

[16] Redeemer/Crusader Rule 9019 Motion, 7-8.

[17] *See Objection to the Debtor's Motion for Entry of an Order Approving Settlements with (A) the Redeemer Committee of the Highland Crusader Fund (Claim No. 72), and (B) the Highland Crusader Funds (Claim No. 81)* ("UBS Objection"), Bankr. Dkt. No. 1190.

against Highland for more than $1 billion.[18]  UBS objected to the proposed Redeemer/Crusader

Rule 9019 Settlement on the basis that Highland had not met its burden of showing that it was "a

fair and equitable compromise within the range of reasonable alternatives."[19]  At the end of the

Hearing on the Redeemer/Crusader Rule 9019 Motion, the bankruptcy court overruled UBS's

objection and approved[20] the Redeemer/Crusader Rule 9019 Settlement, noting that proper notice

had been given, and noting the legal standards under Fifth Circuit jurisprudence that a bankruptcy

court is supposed to use when considering a motion under Rule 9019 to approve a compromise of

a controversy:

> [T]he Court has to evaluate whether the compromise and settlement is fair and
> equitable and in the best interest of creditors when considering three things:  One,
> the probability of success on the merits in future litigation, with due consideration
> for uncertainty of law and fact; two, the complexity and likely duration of litigation
> and any attendant inconvenience and delay; and three, all other factors bearing on
> the wisdom of the compromise.  The Court is also supposed to consider the
> paramount interests of the creditors.[21]

In approving the Redeemer/Crusader Rule 9019 Settlement, the bankruptcy court found that it was

"eminently reasonable, fair and equitable, [and] in the best interest of creditors."[22]  The court

entered its order approving the Redeemer/Crusader Rule 9019 Settlement on October 23, 2020.

UBS timely filed an appeal of the order approving the Redeemer/Crusader Rule 9019 Settlement,

---

[18] As described in the Confirmation Order approving Highland's Chapter 11 Plan (Bankr. Dkt. No. 1943), at 9:

> The UBS Claim was based on a judgment that UBS received from a New York state court in 2020.
> The underlying decision was issued in November 2019, after a multi-week bench trial (which had
> occurred many months earlier) on a breach of contract claim against non-Debtor entities in the
> Highland complex. The UBS litigation related to activities that occurred in 2008 and 2009. The
> litigation involving UBS and Highland and affiliates was pending for more than a decade (there
> having been numerous interlocutory appeals during its history). The Debtor and UBS [at the time
> of confirmation, had] recently announced an agreement in principle for a settlement of the UBS
> claim (which came a few months after Bankruptcy Court ordered mediation) which w[ould] be
> subject to a 9019 motion to be filed with the Bankruptcy Court [post-confirmation].

[19] UBS Objection, 1.

[20] *See generally* Transcript of October 20, 2020 Hearing on the Redeemer/Crusader Rule 9019 Motion ("Transcript of
9019 Hearing"), Bankr. Dkt. No. 1271, 163:13-167:8.

[21] Transcript of 9019 Hearing, 163:18-164:10.

[22] Transcript of 9019 Hearing, 164:12-16.

which it later withdrew. DAF did not appeal the order approving the Redeemer/Crusader Rule 9019 Settlement.

The Redeemer/Crusader Rule 9019 Settlement, along with settlements with most of Highland's other major unsecured creditors, ***became an integral component of Highland's confirmed Chapter 11 Plan***.[23]   In its Confirmation Order approving the Chapter 11 Plan, the court referenced the Redeemer/Crusader Rule 9019 Settlement and certain other major settlements negotiated during the Highland bankruptcy case.[24]   The court went on to make a finding that the members of the UCC in the Highland case (which included the Redeemer Committee), were "highly sophisticated and have had highly sophisticated professionals representing them" and that "[t]hey have represented their constituency in this case as fiduciaries extremely well."

Fast-forward a few months—in order to provide further important context.  Recall that the "Breach of Fiduciary Duty Theory B" in DAF's Second Amended Petition also states that Alvarez & Marsal "abdicated its responsibilities" as investment manager by permitting or participating in the Crusader Funds' sale of their allowed unsecured claims against Highland to third-party claims buyers (i.e., by engaging in "Claims Trading"), which occurred post-petition—in fact, two months after confirmation, in April 2021 (the "Claims Trading Theory").  What does this mean?  Well, as it turns out, the aforementioned Claims Trading Theory was at the heart of ***another*** post-confirmation contested matter in the bankruptcy court recently—specifically, an emergency motion filed by ***another*** Dondero-controlled entity known as Hunter Mountain Investment Trust ("HMIT"), which is a former equity interest holder of Highland.  In that contested matter, HMIT sought leave to file an adversary proceeding against James P. Seery ("Seery"), the Reorganized

---

[23] The Redeemer/Crusader Rule 9019 Settlement, as well as other settlements, were described in detail, in the Highland Disclosure Statement. (Bankr. Dkt. No. 1473), 28-29.

[24] Confirmation Order (Bankr. Dkt. No. 1943), 9-10.

Debtor's current Chief Executive Officer, for alleged breaches of fiduciary duty in connection with the post-confirmation Claims Trading ("Motion to Sue Seery Regarding Claims Trading"). This Motion to Sue Seery Regarding Claims Trading required the bankruptcy court to sort through the Highland Confirmed Plan's Gatekeeper Provision—and how and whether to apply it, since Seery (a party clearly protected by the Gatekeeper Provision) was a party that HMIT wanted to sue regarding the Claims Trading.  The court denied HMIT permission to sue over the Claims Trading on the basis that: (1) HMIT would lack constitutional standing to bring the proposed claims (because HMIT was not a vested interest holder under the confirmed Plan); (2) even if HMIT would have constitutional standing to pursue the proposed claims, it would lack prudential standing under Delaware law to bring the proposed claims; and, further, (3) even if HMIT would have both constitutional standing and prudential standing to bring the proposed claims, it had not met its burden of showing that its proposed claims were "colorable" claims as is required under the Gatekeeper Provisions.[25]  In denying HMIT's Motion to Sue Seery Regarding Claims Trading, the bankruptcy court concluded that Dondero was "the driving force" behind HMIT's Motion to Sue Seery Regarding Claims Trading and that the Motion to Sue Seery Regarding Claims Trading "[wa]s just one more attempt by Dondero to press his conspiracy theory [involving Seery and the claims purchasers relating to the Claims Trading], that he ha[d] pressed for over two years [then], unsuccessfully, in Texas state court through Rule 202 proceedings, with the Texas State Securities Board, and with the United States Trustee's office."[26]

---

[25] *See Memorandum Opinion and Order Pursuant to Plan "Gatekeeper Provision" and Pre-Confirmation Gatekeeper Orders": Denying Hunter Mountain Investment Trust's Emergency Motion for Leave to File Verified Adversary Proceeding* ("Order Denying HMIT's Motion for Leave"), Bankr. Dkt. No. 3904.  HMIT appealed this order, and the appeal is currently pending in the district court.

[26] Order Denying HMIT's Motion for Leave, 42.

So, at present, the bankruptcy court now has before it the Motion to Dismiss, in which it confronts—once again—allegations (albeit from another Dondero-affiliated party) that there were breaches of fiduciary duty associated with the Claims Trading.  Only this time, it is Alvarez & Marsal which is the alleged fiduciary duty breacher, and this time the plaintiff is DAF.

The bankruptcy court has set forth this extensive context—taking judicial notice of other pleadings and proceedings during the Highland bankruptcy case—because this Action presents familiar themes that this court keeps seeing again and again and again:  complaints regarding allegedly improper conduct in connection with bankruptcy settlements that were heavily vetted during the bankruptcy case;[27]  complaints about bankruptcy claims trading (which the bankruptcy court has already written on extensively); allegations of people breaching fiduciary duties.  It is sometimes different Dondero-affiliates as plaintiffs, sometimes different lawyers at the helm, sometimes different courts in which suits are commenced, and sometimes different labels on causes of action or remedies being sought. But it's the same song, different verse.

## III.    LEGAL ANALYSIS

### A. Legal Standard

Alvarez & Marsal seeks dismissal of Breach of Fiduciary Duty Theory B for failure to state a claim upon which relief can be granted under Rule 12(c), as opposed to Rule 12(b)(6).[28]   Alvarez

---

[27] *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P.,* 2024 WL 4139647 (N.D. Tex. Sept. 10, 2024); *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P.*, 2023 WL 41964 (Bankr. N.D. Tex. June 25, 2023).

[28] Rule 12 of the Federal Rules of Civil Procedure is made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7012. Rule 12(c) permits a motion for judgment on the pleadings "[a]fter the pleadings are closed."  The court notes that Defendant has not filed an answer to DAF's Second Amended Petition (in either State Court or this court, after removal).  However, this does not pose a timing-problem with its Rule 12(c) Motion to Dismiss.  As noted by Alvarez & Marsal, it earlier filed a general denial answer to DAF's original petition in State Court in 2022 and, under Texas law, its general denial answer to the original petition is presumed to extend to the matters set up by DAF in its Second Amended Petition.  *See* Motion to Dismiss Brief, 5 ("Pursuant to Texas Rule of Civil Procedure 92, '[w]hen the defendant has pleaded a general denial, and plaintiff shall afterward amend his pleading, such original denial shall be presumed to extend to all matters subsequently set up by the plaintiff.'") (citing Tex. R. Civ. P. 92).

& Marsal also seeks dismissal of Breach of Fiduciary Duty Theory B under Rule 12 on the basis

that DAF lacks standing under applicable law to bring its claims.  Alvarez & Marsal is not

challenging DAF's Article III constitutional standing (which would be a matter of this court's

subject matter jurisdiction) but DAF's prudential standing (which does not go to subject matter

jurisdiction but to the merits of the claim).[29]

"A court may dismiss a complaint as a matter of law when the plaintiff fails 'to state a

claim upon which relief can be granted.'" *Vardeman v. City of Houston*, 55 F.4th 1045, 1049-50

(5th Cir. 2022) (quoting FED. R. CIV. P. 12(b)(6)).  A Rule 12(c) motion for judgment on the

pleadings is evaluated under the same standards as a Rule 12(b)(6) motion to dismiss.  *Vardeman*,

55 F.4th at 1049 (5th Cir. 2022) ("The Rule 12(c) standard is the same as that applied to Rule

12(b)(6).") (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In evaluating a motion to dismiss under Rule 12(b)(6), a complaint is to be charitably construed,

with all well-pleaded factual allegations being accepted as true and with any reasonable inferences

---

[29] The Fifth Circuit has cautioned against conflating the two types of standing—Article III constitutional standing, which is a matter of subject matter jurisdiction, and prudential standing, which is not. *See Abraugh v. Altimus*, 26 F.4th 298, 303-04 (5th Cir. 2022) ("[T]he district court did not err in describing [the plaintiff's] inability to sue under Louisiana law as a defect of 'standing.' But it is a defect of prudential standing, not Article III standing. And the difference matters here, because Article III standing is the only kind of standing required before a federal district court can exercise subject matter jurisdiction.").  The Fifth Circuit emphasized that

> prudential standing does not present a jurisdictional question, but a merits question: who, according to the governing substantive law, is entitled to enforce the right? As the Federal Rules of Civil Procedure make clear, "an action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1).  And a violation of this rule is a failure of "prudential" standing.  Not one of our precedents holds that the inquiry is jurisdictional.  It goes only to the validity of the cause of action. And the absence of a valid cause of action does not implicate subject-matter jurisdiction.

*Id.* at 304 (cleaned up).  *See also Harold Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."); *Oliver v. Pennymac Loan Servs., LLC*, 2024 WL 1018527 (N.D. Tex., Mar. 7, 2024) (where the district court, adopting the magistrate's judge's report and recommendation, dismissed with prejudice, pursuant to Rule 12(c), a breach of contract claim due to lack of standing).

from those facts being drawn in favor of the non-moving party. *Twombly*, 550 U.S. at 555-56.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully[,]" such that "[w]here a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly* at

556, 557).[30]

> B. *Assuming Texas Common Law Applies—as DAF Proposes—a Fund Manager Does Not Owe a Direct Fiduciary Duty to an Individual Investor in a Fund.*

DAF argues that its breach of fiduciary duty claim against Alvarez & Marsal is viable under

Texas law. DAF argues that Texas courts have stated that an ***informal fiduciary duty*** may

sometimes exist between parties, and it can plausibly assert such an informal fiduciary duty was

owed to it here by Alvarez & Marsal.[31] DAF cites only one Texas state appellate court case for

its position, *Mary E. Bivins Foundation v. Highland Capital Management, L.P.*[32] Meanwhile,

Alvarez & Marsal argues that the *Bivins* case stands for the exactly opposite proposition—that

---

[30] In *Iqbal*, the Supreme Court affirmed the *Twombly* two-pronged approach to deciding motions to dismiss: first, determine what is a factual allegation versus a legal conclusion, as only factual allegations will be accepted as true; and second, determine whether the factual allegations state a plausible claim for relief. *Iqbal,* 566 U.S. at 678-80.

[31] As noted above, the parties disagree as to whether Bermuda or Texas substantive law applies to DAF's Mismanagement of Bankruptcy Claims Theory (i.e., Breach of Fiduciary Duty Theory B)—with DAF taking the position that Texas substantive law applies while Alvarez & Marsal asserts the substantive laws of Bermuda apply. This court would look to Texas choice of law rules to make this determination, but only if there would be a conflict in the laws of the competing jurisdictions regarding the issue being considered. It is not disputed that, under Bermuda law and Texas law, a fund manager owes a fiduciary duty ***to the fund*** it manages, and that the fund, itself, might have a claim for damages to the fund arising from any breach of that fiduciary duty. The issue presented by DAF here is whether applicable law recognizes that a ***fund manager*** also owes a fiduciary duty ***to an individual investor in the fund***, and here lies the potential conflict: Alvarez & Marsal argues that such duty does not exist under Bermuda law, and that the issue is only whether Bermuda law permits an individual investor to sue ***on behalf of the fund*** (i.e., a matter of standing to bring a derivative claim); DAF does not contest this application of Bermuda law, but instead argues that Texas law applies and that Texas courts recognize a separate, additional, ***informal*** fiduciary duty may exist between an investment manager and individual investor in the fund. DAF further argues that such a duty existed here such that DAF has a direct claim for breach of an informal fiduciary duty against Alvarez & Marsal in this Action. Thus, before deciding whether Bermuda law or Texas law applies here, the court will analyze DAF's arguments regarding Texas law to determine if the laws of the two jurisdictions actually conflict.

[32] 451 S.W.3d 104, 113-14 (Tex. App.—Dallas 2014, no pet.).

there is no Texas authority that recognizes a fiduciary relationship between an investment manager of a fund and an investor in that fund and that DAF has not alleged facts to establish that Alvarez & Marsal somehow owed a direct, independent, and "informal" fiduciary duty to DAF.

The court agrees with Alvarez & Marsal.  The facts in the *Bivins* case are strikingly similar to the facts of this Action.  In fact—in an amazing twist of irony—*Bivins* involved a claim by an investor, Mary E. Bivins Foundation (the "Bivins Foundation"), ***against Highland***, as an investment manager of a fund in which the Bivins Foundation was invested.  The Bivens Foundation also sued Dondero (in his capacity as Highland's president and CEO) and Mark Okada (in his capacity as Highland's chief investment officer) for Highland's alleged mismanagement of the investor's funds.  The court in *Bivins* agreed with Highland (again, ***the investment manager*** of the fund in which the Bivins Foundation had invested) that, under Texas law, it ***did not*** owe any duties, fiduciary or otherwise, to the individual investor to protect the investor's investments in the hedge fund.  Therefore, the court affirmed the district court's grant of summary judgment of no liability in favor of the investment manager, Highland, and the individual defendants, Dondero and Okada, as to the investor's claims against them for mismanagement of the investor's investment funds.

In analyzing the Bivins Foundation's claim against Highland, Dondero, and Okada for breach of fiduciary duty, the *Bivins* court started with the unremarkable proposition that, to prevail on a claim for breach of a fiduciary duty, a plaintiff first must establish that the defendant, indeed,

owed the plaintiff a fiduciary duty.[33] Whether a fiduciary duty exists is a question of law.[34] "In some cases, a fiduciary duty arises as a matter of law, such as in attorney-client or trustee relationships."[35] The *Bivins* court noted that Texas courts have also recognized an "informal fiduciary duty" that "may arise from a moral, social, domestic or purely personal relationship of trust and confidence[,] but that not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship" because, under Texas law, "[a] fiduciary relationship is an extraordinary one that the law does not recognize lightly."[36] The court noted, in relation to the issue of where corporate officers' duties lie—to the corporation or to the individual shareholders of the corporation—that they "owe fiduciary duties to the corporations they serve, but they do not owe fiduciary duties to the individual shareholders unless a contract or special relationship exists between them in addition to the corporate relationship."[37]

DAF seizes on the reference in *Bivins* to ***informal*** fiduciary duties—arguing that the court implied there could be an informal fiduciary duty between an investor and a fund manager and that "[a]lthough the *Bivins* court ultimately found that an informal fiduciary duty did not exist under the facts of that case, the facts here are significantly different."[38]

The court does not read *Bivins* to open the door that is suggested by DAF. First and foremost, DAF misconstrues the type of relationship and circumstances that the *Bivins* court

---

[33] *Bivins*, 451 S.W.3d at 113 (citing *Johnston v. Kruse*, 261 S.W.3d 895, 902 (Tex.App.—Dallas 2008, no pet.)). The plaintiff investor in *Bivins* asserted several claims against Highland in addition to its claim for breach of fiduciary duty, including claims for negligence and gross negligence (or breach of a duty of care). *Bivins* stands for the well-established legal proposition that a defendant cannot breach a duty if it does not owe that duty in the first instance. *See id.* at 110 (To prevail on its claims for negligence and gross negligence, the Bivins Foundation had to establish that Highland and its officers owed it a duty of care in the first place.).

[34] *Id.* (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005)).

[35] *Id.*

[36] *Id.* (citing *Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex.App.—San Antonio 2003, no pet.).

[37] *Id.* (cleaned up).

[38] Response, 7.

recognized *might* give rise to an "informal" fiduciary relationship under Texas law.  The *Bivins* court cites, primarily, to the Texas Supreme Court case of *Meyer v. Cathey*[39] for the proposition that Texas law may recognize the existence of an "informal" fiduciary relationship between parties while also noting that, under Texas law, a fiduciary relationship is "an extraordinary one" that Texas courts will not "recognize lightly."[40]   And, a review of *Meyer* and Texas Supreme Court cases cited by the *Meyer* court, reveals that the types of relationships and circumstances in which Texas courts might recognize an "informal" fiduciary duty require something more than a business relationship: there must be a special relationship of trust and confidence that had been established ***prior to, and apart from***, the establishment of the parties' business relationship.  For example, *Meyer* cites two of its earlier cases where they recognized an informal fiduciary duty "that arises from 'a moral, social, domestic, or purely personal relationship of trust or confidence.'"[41]   And, the *Meyer* court quotes *Associated Indem. Corp.* in noting that "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."[42]   And, the court in *Schlumberger* used almost identical language:  "[W]hile a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit."[43]   Moreover, that prior, separate relationship (distinct from the business relationship) must be a

---

[39] 167 S.W.3d 327.

[40] *Bivins*, 451 S.W.3d at 113 (quoting *Myer v. Cuevas*, 119 S.W.3d at 836).

[41] *Meyer*, 167 S.W.3d at 331 (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998) and citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997)).

[42] *Id.* (quoting *Associated Indem. Corp.*, 964 S.W.2d at 288).

[43] *Schlumberger*, 959 S.W.2d at 177 (citing *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex. 1995)).

personal relationship of trust or confidence, not another business relationship.[44]  Here, DAF does

not even purport to allege that it had such a ***personal*** relationship of trust and confidence with

Alvarez & Marsal ***prior to*** the establishment of Alvarez & Marsal's business relationship with

Crusader Fund II as investment manager so as to satisfy the requirements of any claim for breach

of an informal fiduciary duty under Texas law.

  Second, in holding that the hedge fund's investment manager (ironically Highland) and its

officers (including, ironically again, Dondero) did ***not*** owe a fiduciary duty to an investor in the

hedge fund, the court in *Bivins* noted first that the Bivins Foundation (investor) "***d[id] not cite, and***

***we have not found, any Texas authority recognizing a fiduciary relationship between an investor***

***in a hedge fund and the hedge fund's investment manager.***"[45]  And, the court determined that the

investment manager, Highland, did not owe some kind of "informal" fiduciary duty, as argued by

the investor and plaintiff, the Bivins Foundation, either.  The court in *Bivins* found persuasive

certain authority from the District of Columbia Court of Appeals ***cited by Highland, Dondero,***

***and Okada*** in support of their position that Highland as investment manager of the hedge fund did

not owe a fiduciary duty to the Bivins Foundation as an investor in the hedge fund.[46]  Noting that

the D.C. Circuit "ultimately concluded [in that case] that investors in [a] fund were not clients of

---

[44] In all of these cases, the Texas Supreme Court describes the relationship of trust and confidence as one "of moral, social, domestic or purely personal."  Moreover, a Texas appellate court has specifically stated that "[a] person is justified in placing confidence in the belief that another party will act in his best interest only where he is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship ***as well as personal friendship***." *Armstrong v. Armstrong*, 570 S.W.3d 783 (Tex.App.—El Paso, 2018) (emphasis added). The court in *Armstrong* found the plaintiff's "subjective trust" of his own brother, "without more," to be "insufficient to transform the family relationship into an informal fiduciary relationship existing prior to, and apart from, the real estate agreement that form[ed] the basis of the suit." *Id.* at 791.

[45] *Id.* (emphasis added).

[46] *Id.* (citing *Goldstein v. SEC*, 451 F.3d 873, 874 (D.C. Cir. 2006)).

the fund's adviser and, consequently, were not owed a fiduciary duty by the adviser[,]"[47] the court

quoted extensively the D.C. Circuit's reasoning:[48]

> In reaching this conclusion, the court stated, "The adviser is concerned with the
> fund's performance, not with each investor's financial condition," and explained:
>
>> If the investors are owed a fiduciary duty and the entity is also owed
>> a fiduciary duty, then the adviser will inevitably face conflicts of
>> interest. Consider an investment adviser to a hedge fund that is about
>> to go bankrupt. His advice to the fund will likely include any and all
>> measures to remain solvent. His advice to an investor in the fund,
>> however, would likely be to sell. For the same reason, we do not
>> ordinarily deem the shareholders in a corporation the "clients" of the
>> corporation's lawyers or accountants. While the shareholders may
>> benefit from the professionals' counsel indirectly, their individual
>> interests easily can be drawn into conflict with the interests of the
>> entity.  It simply cannot be the case that investment advisers are the
>> servants of two masters in this way.

The *Bivins* court also cited the D.C. Circuit's reasoning in *Goldstein* in refusing to find that

Highland and its officers owed some sort of "informal" fiduciary duty to the Bivins Foundation

under the facts of that case:[49]

> The only basis for imposing a fiduciary duty alleged by the Foundation in this case
> is [Highland's] position as investment manager of the Fund and the Officers'
> positions as employees of [Highland]. But [Highland's] contract was with the Fund
> to act as its investment adviser. ***To impose a fiduciary duty on [Highland] and the
> Officers to the Foundation under the facts of this case would place them in the
> position of being the "servants of two masters." Additionally, the Foundation did
> not present any evidence that it had an informal trust or confidential relationship
> with [Highland] and the Officers or received direct investment advice from
> [Highland] and the Officers that would give rise to a fiduciary duty. We will not
> impose a fiduciary duty in the absence of circumstances showing a formal or
> informal relationship giving rise to such a duty.*** Consequently, we conclude that
> the trial court did not err by granting a no-evidence summary judgment on the
> Foundation's claim for breach of fiduciary duty.

---

[47] *Id.* (citing *Goldstein*, 451 F.3d at 881-84).

[48] *Id.* at 113-14 (citing *Goldstein*, 451 F.3d at 880-81).

[49] *Id.* at 114 (internal citations omitted) (emphasis added).

Here, the court concludes that DAF, in its capacity as an investor in the Crusader Fund II, has not pointed to any facts that, if true, and with all reasonable inferences being drawn in its favor, would lead to the conclusion that it has plausibly pleaded that Alvarez & Marsal owed DAF a fiduciary duty, formal or informal.  Thus, the portion of DAF's Count One Breach of Fiduciary Duty Claim that alleges the Mismanagement of Bankruptcy Claims Theory should be dismissed under Rule 12(c).  *Bivins* supports this conclusion.  Contrary to DAF's protestations otherwise, it has not alleged any facts that would distinguish this case from *Bivins*:  just like the investor in *Bivins*, DAF has not alleged any facts that would support a finding that it had an informal trust or confidential relationship with the Crusader Fund II's investment manager, Alvarez & Marsal, or that DAF received direct investment advice from Alvarez & Marsal that would give rise to a fiduciary duty.

To be clear, Bermuda law and Texas law do not conflict on this issue.  Therefore, the court need not conduct an analysis under Texas choice-of-law rules to determine whether Bermuda or Texas law applies here.  Direct fiduciary duties are not owed by an investment manager to individual investors in a fund.  The duties are owed to the fund—with whom the investment manager has a contractual relationship.  Any mismanagement or other tortious conduct would cause damages to the fund.

### C. *Under Bermuda or Texas Law, DAF Has Essentially Asserted a Claim that Would be Derivative of Injury to Crusader Fund II and Has Not Established Derivative Standing to Pursue the Claim*

Under Bermuda and Texas law, then—with respect to its Breach of Fiduciary Duty Theory B—DAF has pleaded a breach of a fiduciary duty owed by Alvarez & Marsal to the fund it manages, Crusader Fund II, for injuries arising from Alvarez & Marsal's alleged mismanagement ***of the Crusader Funds'*** bankruptcy claims, and, thus, the issue is whether, under either Bermuda

or Texas law, DAF would have standing to assert what is, effectively, a derivative claim on behalf

of Crusader Fund II with regard to the Breach of Fiduciary Duty Theory B claim.  Alvarez &

Marsal argues that this portion of the breach of fiduciary duty cause of action should be dismissed

because DAF's allegations fail to meet the derivative standing requirements under Bermuda law

or under the Federal Rules of Bankruptcy Procedure 7023.1 (regarding derivative actions asserted

in bankruptcy adversary proceedings),[50] and, therefore, it lacks prudential standing to bring this

claim.  DAF argues that derivative standing requirements under Bermuda law and Rule 7023.1 do

not apply because it is asserting a direct claim, not a derivative claim, under Texas law.[51]  But, just

because DAF alleges that it is asserting a direct, and not derivative, claim under Texas law, does

not make it so:  "a claim is not 'direct' simply because it is pleaded that way."[52]  Rather, in

determining whether claims are direct or derivative, a court must "look at the substance of the

Petition, and the nature of the wrongs alleged therein, rather than the Plaintiffs' characterization."[53]

Under either Texas or Bermuda law,[54] a claim for breach of fiduciary duty which injured the entity

---

[50] Federal Rule of Bankruptcy Procedure 7023.1 makes applicable Federal Rule of Civil Procedure 23.1, which sets forth the prerequisites and pleading requirements for when shareholders of a corporation or members of an unincorporated association "bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."

[51] *See* Response, 1 ("DAF has asserted a direct breach of informal fiduciary duty claim under Texas law. As a result, neither Bankruptcy Rule 7023.1, nor Federal Rule 23.1, nor Bermuda law applies here.").

[52] *Schmermerhorn v. CenturyTel, Inc. (In re SkyPort Global Commc'ns, Inc.)*, Adv. Pro. No. 10-3150, 2011 WL 111427, at *26 (Bankr. S.D. Tex. Jan. 13, 2011) (cleaned up).

[53] *See id.* (citing *Armstrong v. Capshaw, Goss & Bowers LLP*, 404 F.3d 933, 936 (5th Cir. 2005)); *see also Moore v. Simon Enters., Inc.*, 919 F. Supp. 1007, 1009 (N.D. Tex. 1995) ("The determination of whether a claim is a derivative claim or a direct claim is made by reference to the nature of the wrongs alleged in the complaint, and is not limited by a [party's] characterization or stated intention.") (cleaned up).

[54] State law determines whether a cause of action for breach of fiduciary duty is direct or derivative. *See Griffin v. Box*, No. 93-1880, 1996 WL 255296 *12 (5th Cir. Nov. 18, 1994) (citing *7547 Corp. v. Parker & Parsley Dev. Partners*, 38 F.3d 211, 221 (5th Cir. 1994); *see also Gobsmack Gift Tr. v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 687 n.10 (Bankr. S.D. Tex. 2016).

in which an investor or equity holder holds an interest constitutes a derivative claim owned by the entity that suffered the wrongs and not its individual investors or equity holders.[55]

Looking to the substance of the Second Amended Petition, the nature of the wrongs alleged as to the Breach of Fiduciary Duty Theory B—the Mismanagement of Bankruptcy Claims Theory—is injury to the Crusader Funds and its investors, which includes DAF as an investor in Crusader Fund II, but is not specific to DAF.   In other words, DAF's allegations in the Second Amended Petition, with respect to the alleged mismanagement of the Crusader Funds' bankruptcy claims, does not allege that DAF was harmed separately and apart from the way the other investors in the Crusader Fund II were harmed.   The gravamen of DAF's allegations under its Breach of Fiduciary Duty Theory B, first asserted in the Second Amended Petition, is that the Crusader Fund II, itself, suffered a loss as a result of Alvarez & Marsal's alleged mismanagement of the bankruptcy claims.   In its Second Amended Petition, DAF repeats, almost verbatim, the allegations of its prior pleadings regarding Alvarez & Marsal's alleged wrongful refusal to make distributions to DAF from Crusader Fund II in a section entitled "Withheld Distributions"[56] ***and then adds new allegations under a separate section entitled "Sale of Claims,"***[57] ***which are the subject of this Motion to Dismiss***.  For example, DAF alleged that Alvarez & Marsal:

---

[55] *See Griffin*, 1996 WL 255296, at *12 ("Plaintiffs cite no Texas cases, and we have found none, holding that an investor or limited partner in a limited partnership may sue directly for a breach of fiduciary duty which injured the partnership. Following the guidance of this court in *Parker & Parsley*, we believe that a Texas court would likely consider the fiduciary duty claim in this case to be derivative.") (citing *Parker & Parsley*, 38 F.3d at 221, for the proposition that unitholders and limited partners may not sue directly under Texas law for wrongs suffered by the partnership); *In re Chiron Equities*, 552 B.R. at 687 (Under Texas law, the court looks to the nature of the wrongs alleged, and if it is of indirect harm to the equity holder, through a diminution of the value of its interest by virtue of harm inflicted on the entity, the claim is derivative.); *Erie Cty. Emps. Ret. Sys. v. Isenberg*, Civ. Act. No. H-11-4052, at *3 (S.D. Tex. July 30, 2012) (describing derivative claims under Bermuda law as claims "addressing a wrong done to a company"); Appendix to Motion to Dismiss Brief, Exhibit 6, Declaration of Christian Luthi ("Luthi Decl."), 79-80, ¶¶ 27-30.

[56] Second Amended Petition, ¶¶ 11-16.

[57] Second Amended Petition, ¶¶ 17-26.

- "violated[ ] separate and independent fiduciary duties which should have ensured, but did not, that ***all Crusader Fund investors were treated fairly*** . . . .";[58]

- entered into a settlement with Highland that reduced the Crusader Funds bankruptcy claims from $214 million to $137 million and, while doing so, "allowed the Redeemer Committee to control negotiations ***concerning funds to which the Crusader Funds asserted entitlement***.";[59]

- "abdicated – to the Redeemer Committee – its ***duties to manage Crusader Fund II's assets***, thereby failing to ensure fair treatment of ***all interest holders and maximization of recovery***.";[60] and

- caused harm to all of the Crusader Funds' investors in alleging that, had Alvarez and Marsal simply held on to the bankruptcy claims, "***the Crusader Funds' investors would have received an additional $30 million over what was paid for the Claims***."[61]

DAF added a new paragraph to its first cause of action for breach of fiduciary duties that set forth DAF's Breach of Fiduciary Duty Theory B, which clearly is based on its new allegations relating to Alvarez & Marsal's management of the Crusader Funds' bankruptcy claims and clearly alleges harm suffered by all of the investors of the Crusader Fund II, as opposed to harm suffered by DAF, uniquely:  "By abdicating its responsibilities to manage the recovery and sale of the [Crusader Funds' bankruptcy claims], Alvarez & Marsal further breached its fiduciary duties ***to the investors of Crusader Fund II***," including its duty "***to ensure that the sale of the Claims was in the best interests of all investors***."[62]

As pleaded, DAF has asserted the quintessential derivative claim (with respect to its Breach of Fiduciary Duty Theory B (or Mismanagement of Bankruptcy Claims Theory). DAF's allegations have failed to meet the derivative standing requirements under Bermuda law or under

---

[58] Second Amended Petition, ¶ 17 (emphasis added).

[59] Second Amended Petition, ¶ 21 (emphasis added).

[60] Second Amended Petition, ¶ 22 (emphasis added).

[61] Second Amended Petition, ¶ 24 (emphasis added).

[62] Second Amended Petition, ¶ 31 (emphasis added).

the Federal Rules of Bankruptcy Procedure 7023.1, and, therefore, it lacks prudential standing to bring this claim. The court need not address the applicable derivative standing requirements here because DAF has acknowledged, by failing to respond to Alvarez & Marsal's arguments on this issue and, instead, insisting that it is asserting a direct claim and not even attempting to meet the standing requirements to assert a derivative claim, that it lacks standing to assert that portion of its breach of fiduciary claim based on its Mismanagement of Bankruptcy Claims Theory. DAF established—at least as to this particular battle—its dogged insistence that it is asserting a direct claim against Alvarez & Marsal with respect to its Breach of Fiduciary Duty Theory B cause of action and thus derivative standing requirements (under any law – Bermuda, Texas, or the Federal Rules of Bankruptcy Procedure) do not apply, as its hill to die on. Because the court has determined that DAF's Breach of Fiduciary Duty Theory B is a derivative claim (and that Alvarez & Marsal, as investment manager, did not owe a direct duty to DAF, an individual investor in Crusader Fund II), DAF's pursuit of that portion of its Breach of Fiduciary Duty claim dies here. Alvarez & Marsal is entitled to a judgment on the pleadings under Rule 12(c) for failure to state a claim with respect to DAF's Breach of Fiduciary Duty Theory B for lack of standing to assert the derivative claim. And, because DAF has acknowledged that it is not even attempting to plead derivative standing, the court need not address Alvarez & Marsal's alternative substantive argument that DAF, if it had standing to assert the derivative claim, otherwise fails to plausibly state a claim for relief for breach of fiduciary duty under applicable law.

### D.  Motion for Leave to Replead

In its Response, DAF requests leave, in the alternative to dismissal, "to amend the Second Amended Petition to clarify that DAF alleges a direct claim with direct damages experienced only

by DAF . . . and to otherwise address any issues raised by [Alvarez & Marsal] . . . ."[63]  DAF further

clarified, at the Hearing, that it did not intend, if granted leave, to amend its petition to make any

allegations regarding any derivative standing it may have to bring any breach of fiduciary duty

claim against Alvarez & Marsal on behalf of Crusader Fund II for breach of a fiduciary duty owed

by Alvarez & Marsal as investment manager to the fund its managed.   DAF correctly notes that

courts will frequently give plaintiffs one last chance to amend its pleading to cure deficiencies

before dismissing a case:  "'[D]istrict courts often afford plaintiffs at least one opportunity to cure

pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or

the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will

avoid dismissal.'"[64]   And, DAF acknowledges that courts consider certain factors when

considering a request for leave to replead:  "When deciding whether to grant leave to amend,

district courts consider the following factors: 'undue delay, bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party, and futility of amendment.'"[65]   Alvarez & Marsal argues that

DAF's request to replead in yet a third amended petition should be denied because DAF's proposed

amendments would be futile.[66]  DAF argues that its amendment would not be futile because it has

shown that "Texas law [under *Bivins*] recognizes informal fiduciary duties including between an

investor and an investment manager . . . ." and suggesting that the court should grant leave to

replead under federal pleading standards when the original petition had been filed under the Texas

---

[63] *See* Response, 12.

[64] *See* Response, 12 (quoting *Guardian Flight LLC v. Health Care Serv. Corp.*, 735 F. Supp. 3d 742, 754 (N.D. Tex. 2024) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002))).

[65] *See* Response, 12 (quoting *Guardian Flight*, 735 F. Supp. 3d at 754 (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (citations and emphasis omitted))).

[66] Alvarez & Marsal does not take any position in its briefing regarding the other four factors.

pleading rules that applied pre-removal.[67]   The court agrees with Alvarez & Marsal that granting

DAF leave to amend its petition would be futile.  DAF does not propose to include any new factual

allegations in its amended petition, but has stated that its proposed amendments are intended "to

clarify that DAF alleges a direct claim with direct damages experienced on by DAF" because "only

DAF's interest was cancelled."   But, as noted above, Alvarez & Marsal is not seeking, in this

Motion to Dismiss, dismissal of DAF's claims relating to the cancellation of its interest—the

Withholding of Distributions Theory or Breach of Fiduciary Duty Theory A claim—so granting

DAF's motion for leave to replead would not cure the insufficiency of the claims being challenged

by Alvarez & Marsal in its Motion to Dismiss—the Mismanagement of Bankruptcy Claims Theory

or Breach of Fiduciary Duty Theory B—as to standing and thus would be futile.[68]

## IV.    CONCLUSION

The court concludes that the portion of DAF's breach of fiduciary duty cause of action

relating to the mismanagement of the Crusader Funds' bankruptcy claims in its Second Amended

Petition—again, the Mismanagement of Bankruptcy Claims Theory or Breach of Fiduciary Duty

Theory B—is a derivative claim owned by Crusader Fund II, and not a direct claim of DAF, and

DAF has failed to plead a plausible claim that it has standing, in the first instance, to bring the

derivative claim on behalf of Crusader Fund II.  Alvarez & Marsal is, thus, entitled to a judgment

on the pleadings under Rule 12(c) of dismissal of that portion of DAF's breach of fiduciary duty

claim that the court has referred to as its Breach of Fiduciary Duty Theory B claim.  In addition,

---

[67] Response, 13 (citing *Bivins*, 451 S.W.3d at 113-14 and *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, Civil Action No. 3:20-CV-1348-D, 2020 U.S. Dist. LEXIS 185581, at *6 (N.D. Tex. 2020)).

[68] *See Lewis v. Knutson*, 699 F.2d 230, 239-40 (5th Cir. 1983) (the Fifth Circuit affirmed the district court's denial of plaintiff's motion for leave to amend where plaintiff's proposed amendments would "fail[ ] to cure the standing defect.").

because granting DAF's request for leave to replead the Second Amended Petition to make its proposed amendments would be futile, its Motion for Leave should be denied.

Accordingly,

**IT IS ORDERED** that the Motion for Leave be, and hereby is, **DENIED**;

**IT IS FURTHER ORDERED** that the Motion to Dismiss be, and hereby is, **GRANTED** pursuant to Rule 12(c) in that Alvarez & Marsal is entitled to a judgment on the pleadings dismissing that portion of DAF's breach of fiduciary duty cause of action relating to DAF's Mismanagement of Bankruptcy Claims Theory/Breach of Fiduciary Duty Theory B, with prejudice. Defendant shall forthwith submit a separate Judgment consistent with this ruling.

**###END OF MEMORANDUM OPINION AND ORDER###**
